1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10

11

MARY SWEARINGEN, et al.,

Plaintiffs,

v.

LATE JULY SNACKS LLC,

Defendant.

Case No. 13-cv-04324-EMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Docket No. 101

12

13

## I.   **INTRODUCTION**

14          Plaintiffs Mary Swearingen and Robert Figy filed this class action complaint against

15   Defendant Late July Snacks challenging Defendant's practice of labeling its products with the

16   term "evaporated cane juice" ("ECJ") which Plaintiffs assert is a misleading term for sugar.

17   Currently pending before the Court is Defendant's motion to dismiss Plaintiff's Second Amended

18   Complaint.  Docket No. 101 ("Motion").  The Court **DENIES** the motion.

19   ## II.   **BACKGROUND**

20   A.   California and Federal Laws Regulating Food Labeling

21          Food manufacturers in California must comply with identical state and federal laws and

22   regulations that govern the labeling of food products.  Foremost among these is the federal Food

23   Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), including its food labeling

24   regulations.  21 C.F.R. § 101 *et seq.*  Pursuant to California Health & Safety Code § 110100,

25   California's Sherman Law adopts and incorporates the FDCA, stating that "[a]ll food labeling

26   regulations and any amendments to those regulations adopted pursuant to the federal act, in effect

27   on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this

28   state."  Under the FDCA, food is "misbranded" if "its labeling is false or misleading in any

1    particular," or if it does not contain certain information on its label or its labeling.  21 U.S.C. §

2    403(a).

3         The FDCA requires that ingredients be listed by their common or usual names, which are

4    the names established by common usage or by regulation.  21 C.F.R. § 104(a)(1); 21 C.F.R. §

5    102.5.  The position of the Food and Drug Administration ("FDA") is that "evaporated cane juice"

6    is not the common or usual name of any sweetener (*e.g.*, sugar).  In 2009, the FDA issued

7    *Guidance for Industry: Ingredients Declared As Evaporated Cane Juice, Draft Guidance* ("Draft

8    Guidance"), 2009 WL 3288507.  According to the Draft Guidance, the term ECJ is "false and

9    misleading" because it "fails to reveal the basic nature of the food and its characterizing properties

10   (i.e., that the ingredients are sugars or syrups) as required by 21 C.F.R. § 102.5."  *Id.* at *3; 21

11   U.S.C. 343(a)(1).  The FDA did not initially finalize its draft guidance.  On March 4, 2014, the

12   FDA reopened the comment period on the Draft Guidance with the intent to "revise the draft

13   guidance, if appropriate, and issue it in final form."  *See* Docket No. 57 (Order on Supp. Briefing);

14   Docket No. 53-1 (Def. Second Request for Judicial Notice, Ex. A, *FDA Notice to Reopen*

15   *Comment Period*).  On May 25, 2016, the FDA issued its final guidance on the use of the term

16   "evaporated cane juice," titled "Ingredients Declared as Evaporated Cane Juice: Guidance for

17   Industry" ("Final Guidance").  Docket No. 92.  The Final Guidance states that "the common or

18   usual name for an ingredient labeled as 'evaporated cane juice' includes the term 'sugar' and does

19   not include the term 'juice.'"  *Id.* at 7.  This is because the "basic nature" of ECJ is a "sugar."  *Id.*

20   B.    Facts and Procedural History

21        Late July is a producer of retail food products.  Docket No. 99 (Second Amended

22   Complaint ("SAC")) ¶ 21.  During part of the period covered by the allegations in this case, Late

23   July manufactured, advertised, marketed, and sold products, such as Late July's Classic Saltines

24   Crackers, Classic Rich Crackers, Sea Salt By The Seashore Multigrain Snack Chips, and other

25   varieties of crackers and snack chips, labeled using the term "evaporated cane juice" on their

26   ingredient lists to thousands of consumers nationwide, including many who reside in California.[1]

27

28   [1] Late July no longer uses the term "evaporated cane juice" on their product labels.  Between
     November 2013 and March 2014, Late July replaced the term "evaporated cane juice" with the

2

1   SAC ¶¶ 2, 20.

2          Plaintiffs Mary Swearingen and Robert Figy, citizens of California, bought and purchased

3   Late July products including a variety of crackers and snack chips labeled with ECJ during the

4   Class Period, defined as September 18, 2009 to the present.  SAC ¶¶ 2, 19.  Plaintiffs are health-

5   conscious consumers who wish to avoid "added sugars" in the products they purchase.  *Id.* ¶ 72.

6   As such, they scanned the ingredient lists of the products at issue for forms of added sugar and

7   failed to recognize "evaporated cane juice" as a form of sugar.  *Id.* ¶ 73.  They would not have

8   bought the products had they known that these products contained "added sugar."  *Id.* ¶ 97.

9          Plaintiffs first filed a class action complaint for equitable and injunctive relief on

10  September 18, 2013.  Docket No. 1 (Complaint).  On February 3, 2014, Late July moved to

11  dismiss the First Amended Complaint, arguing, in part, that this Court should apply the doctrine of

12  primary jurisdiction based on the FDA's ongoing regulatory proceeding concerning the use of ECJ

13  on food labels.  Docket No. 32.  Following the FDA's notice that it had reopened the comment

14  period on its draft guidance regarding ECJ, this Court denied in part the motion to dismiss and

15  stayed the action pursuant to the doctrine of primary jurisdiction on May 29, 2014.  Docket No.

16  69.

17         On July 22, 2016, following the FDA's issuance of its Final Guidance, this Court lifted the

18  stay.  Docket No. 98.  Plaintiffs filed their Second Amended Complaint shortly thereafter.  Docket

19  No. 99.  Based on their allegations in the Second Amended Complaint, Plaintiffs brought claims

20  for: (1) violations of California Business & Professions Code § 17200 (Unfair Competition Law or

21  UCL); (2) violations of California Business & Professions Code § 17500 (California False

22  Advertising Law or FAL); (3) violations of California Civil Code § 1750, *et seq.* (Consumer Legal

23  Remedies Act or CLRA); and (4) and unjust enrichment.  SAC ¶¶ 151-212.  Late July then filed

24  the instant motion to dismiss the Second Amended Complaint.  Docket No. 101.

25

26

27  _____

term "Evaporated Cane Sugar" on all products that had used the term "evaporated cane juice."
28  Since this change, Late July has not manufactured a product with a label bearing the term
    "evaporated cane juice."  Docket No. 106 (Decl. of Paul Drakeford).

3

1

**III.   DISCUSSION**

2

A.     Legal Standard

3          Late July seeks to dismiss Plaintiffs' Second Amended Complaint for failure to state a

4    claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), a party may

5    move to dismiss based on the failure to state a claim upon which relief may be granted.  A motion

6    to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See*

7    *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a

8    motion, a court must take all allegations of material fact as true and construe them in the light

9    most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted

10   inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer,* 568 F.3d

11   1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it

12   must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has

13   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

14   reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,*

15   556 U.S. 662 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. at 556.  "The plausibility

16   standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a

17   defendant acted unlawfully."  *Iqbal,* 556 U.S. at 678.

18          Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

19   Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with

20   particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor*

21   *Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009).  To satisfy the heightened standard under Rule 9(b), the

22   allegations must be "specific enough to give defendants notice of the particular misconduct which

23   is alleged to constitute the fraud charged so that they can defend against the charge and not just

24   deny that they have done anything wrong."  *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.

25   1985).  Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific

26   content of the false representations as well as the identities of the parties to the

27   misrepresentations.'"  *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

28   (internal quotation marks omitted).  The plaintiff must set forth "what is false or misleading about

4

1  a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994)

2  (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 253 F.3d 423,

3  429 n. 6 (9th Cir. 2001).

4  B.      Plaintiffs' UCL, CLRA, and FAL Claims

5          As noted above, Plaintiffs assert fraud-based claims under the UCL, FAL, and CLRA.

6          The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus.

7  & Prof. Code § 17200.  Because § 17200 is written in the disjunctive, it establishes "three varieties

8  of unfair competition: practices which are unlawful, unfair, or fraudulent." *Cel-Tech*

9  *Communications, Inc. v. Los Angeles Cellular Telephone, Co.*, 20 Cal. 4th 163, 180 (1999).

10  Practices are "unlawful" when they violate other laws: § 17200 "borrows" violations of other

11  laws, treating them as unlawful practices that are independently actionable under the UCL.  *Id.* at

12  179 [citations omitted].  Practices are "unfair" when grounded in "some legislatively declared

13  policy or proof of some actual or threatened effect on competition." *Id.* at 186-87.  "Unfair,"

14  under § 17200, refers to conduct that could violate an antitrust law, that does violate the policy or

15  spirit of such laws, or that could otherwise significantly threaten or harm competition.  *Id.* at 187.

16  Practices are "fraudulent" when "members of the public are likely to be deceived"; more

17  specifically, under the fraud prong, "reliance [on the part of the plaintiff] is an essential element of

18  fraud." *Poldolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647-48, *as modified* (Nov. 5,

19  1996), *as modified* (Nov. 20, 1996); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

20          The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal Bus. &

21  Prof. Code § 17500.  The CLRA prohibits "unfair methods of competition and unfair or deceptive

22  acts or practices." Cal. Civ. Code § 1770.

23          Claims asserting fraud or deception under each of these three statutes are analyzed using

24  the "same objective test, that is, whether 'members of the public are likely to be deceived.'" *Tait*

25  *v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (quoting *In re Tobacco II*

26  *Cases*, 46 Cal. 4th 298, 312 (2009)); *see also Williams v. Gerber Prod. Co.*, 523 F.3d 934, 938

27  (9th Cir. 2008), *opinion amended and superseded on denial of reh'g,* 552 F.3d 934 (9th Cir.

28  2008).  Fraud claims under each statute require "proof of reliance on the alleged

United States District Court

For the Northern District of California

1    misrepresentations or omissions" by the defendant. *In re MyFordTouch Consumer Litigation*, C-

2    13-3072-EMC, Docket No. 301 at 2 (N.D. Cal. 2016) (citing *In re Tobacco II*, 46 Cal. 4th at 328).

3          Plaintiffs allege that Late July's labeling of its products with the term "evaporated cane

4    juice" is unlawful under the UCL.  Motion ¶ 5.  As noted above, the Sherman Law adopts and

5    incorporates the federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").  21

6    U.S.C. § 343(a).  Under the FDCA, food is "misbranded" if "its labeling is false or misleading in

7    any particular," or if it does not contain certain information on its label or its labeling.  21 U.S.C. §

8    403(a).  So, under the Sherman Law, products are "misbranded" when their "labeling is false or

9    misleading." *See* 21 U.S.C. § 343(a); 21 U.S.C. § 403(a).  Plaintiffs contend that Late July's use

10   of the term ECJ was "false and misleading" in light of the FDA's determination that ECJ is not the

11   common or usual name for sugar.  SAC ¶ 50-51; Final Guidance at 6.

12         As an initial matter, the Court rejects Plaintiffs' claim that reliance need not be shown for

13   their claims arising under the "unlawful" prong or any other prong of the UCL in this case.  The

14   California Supreme Court has made it clear that, regardless of which prong of the UCL a plaintiff

15   asserts, when the basis of a plaintiff's UCL claim is a claim of misrepresentation, a plaintiff must

16   demonstrate actual reliance on the allegedly deceptive or misleading statements. *Kwikset Corp. v.*

17   *Superior Court*, 51 Cal. 4th 310, 326, 327 n.10 (2011).

18         Plaintiffs next argue that if it is required, reliance can be inferred because Late July's use

19   of ECJ constitutes a "material misrepresentation."  Docket No. 107 ("Opposition") at 12:7-8.

20   Under California law, if the plaintiff fails to plead actual reliance, "a presumption, or at least an

21   inference, of reliance arises wherever there is a showing that a misrepresentation was material."

22   *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 977 (1997).  A misrepresentation is

23   judged to be "material" if "a reasonable man would attach importance to its existence or

24   nonexistence in determining his choice of action in the transaction in question." *Engalla*, 15 Cal

25   4th 951, 977 (1997).

26         California courts have adopted the "reasonable consumer" standard for adjudicating the

27   materiality of an alleged misrepresentation. *See In re Google AdWords Litig.,* 5:08–CV–3369

28   EJD, 2012 WL 28068 at *8 (N.D. Cal. Jan. 5, 2012) (citing *Tobacco II*, 46 Cal. 4th at 327); *see*

6

1    *also Yung Kim v. Gen. Motors, LLC*, 99 F. Supp. 3d 1096, 1107 (C.D. Cal. 2015) (explaining that

2    this standard applies to claims under the CLRA, FAL, and UCL).  Under the "reasonable

3    consumer" standard, a plaintiff must show that members of the public are likely to be deceived by

4    the business practice.  *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 962-63 (9th Cir. 2013).

5    "'Likely to deceive' implies more than a mere possibility that the advertisement might

6    conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."

7    *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 508 (2003).  Rather, the reasonable

8    consumer standard adopts the perspective of the "ordinary consumer acting reasonably under the

9    circumstances."  *Id.* at 512.

10        This court has held that the "reasonable consumer" is not necessarily a "particularly

11   sophisticated consumer."  *See Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D.

12   Cal. 2013).  Instead, under the "reasonable consumer" test, Plaintiffs must prove that an ordinary

13   consumer acting reasonably would attach importance to Defendant's ECJ statements, or,

14   alternatively, that Defendant knows or has reason to know that consumers are likely to regard the

15   label statements as important in making purchasing decisions.  *Tobacco II*, 51 Cal. 4th at 333

16   (citing *Engalla*, 15 Cal. 4th 951, 977).

17        Plaintiffs allege that "reasonable consumers would be, and were, misled in the same

18   manner as plaintiffs" by the use of ECJ and that "reasonable consumers do not consider juice to be

19   a sugar or syrup or a refined sugar."  SAC ¶¶ 69, 107.  The Court agrees.  As Plaintiffs note, added

20   sugar is a known health risk that consumers are advised to avoid by the federal government, as

21   well as by scientific and educational institutions.  SAC ¶ 74.  The U.S. Department of Health and

22   Human Services and the U.S. Department of Agriculture's 2010 Dietary Guidelines clearly

23   distinguish between "added sugars" and naturally occurring sugars, and state that consumers

24   should either eliminate or greatly limit their consumption of added sugars and foods containing

25   added sugars.  SAC ¶ 75.  Plaintiffs cite similar statements from the National Institute of Health,

26   the American Heart Association, the Harvard School of Public Health, and others.  SAC ¶¶ 82-94.

27        Given this widespread recognition of the potential dangers of added sugar, a reasonable

28   consumer would likely be concerned with the addition of sugars to snack foods he or she was

7

1    considering purchasing, and would therefore attach importance to Late July's use of the term ECJ

2    which is used in lieu of the common term "sugar." Nor is Late July correct that health concerns

3    are unlikely given the generally unhealthful nature of snack foods. The market is replete with

4    healthier alternatives to even traditional snack foods, such as reduced sodium potato chips or

5    sugar-free candy. Consumers who purchase snack foods are not necessarily unconcerned with the

6    relative healthfulness of those foods. Here, a reasonable consumer might well consider a snack

7    food without added sugar to be a healthier alternative to snack foods with added sugar.

8         Late July further argues that even if Plaintiffs successfully plead that a reasonable

9    consumer would be concerned about "added sugar," Plaintiffs fail to allege facts that would

10   demonstrate that a reasonable consumer would be deceived by the use of ECJ. Reply at 6. Late

11   July argues that because Plaintiffs do not explain how a reasonable consumer would interpret the

12   term "ECJ," their assertion that a reasonable consumer would be deceived is too conclusory to

13   state a claim. Reply at 7.

14        In fact, however, Plaintiffs do explain how they understood the term. Specifically, they

15   allege that "at the time of purchase the believed ECJ was some type of ingredient that was

16   healthier than sugar due to its inclusion of the word juice and its omission of the words sugar or

17   syrup." SAC ¶ 114. Moreover, this interpretation is consistent with the FDA's rationale for

18   determining that ECJ is a misleading term. As Plaintiffs point out, the FDA's determination was

19   based on the fact that the term ECJ "falsely suggests that the sweeteners are juice," SAC ¶ 105

20   (quoting Draft Guidance, 2009 WL 3288507 at *1), which is defined by regulation as "aqueous

21   liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions

22   of one or more fruits or vegetables, or any concentrates of such liquid or puree," 20 C.F.R. §

23   120.1(a). The Final Guidance further explains that it is the word "juice" that makes the term ECJ

24   "confusingly similar to the more common use of the term 'juice.'" Final Guidance at 3. The FDA

25   points to a Department of Health and Human Services publication noting that "'cane juice' is one

26   of the ingredient names used to hide added sugar in beverages and recommends for health reasons

27   that fruit juice given to children be 100 percent fruit juice without any form of added sugar,

28   including 'cane juice.'" Final Guidance at 6. That the FDA guidance indicates that "evaporated

8

**United States District Court**
For the Northern District of California

1    cane juice" is for that reason a "false and misleading" term implies that a reasonable consumer

2    would be confused by the term ECJ, and that that confusion could affect his or her purchasing

3    decisions.

4           Late July further argues that this Court should not presume reliance because it is

5    "implausible" that Plaintiffs could have relied on the use of the term ECJ.  Courts cannot presume

6    reliance where reliance is impossible or implausible.  *See Pratt*, 2015 WL 5770799 at *7; *Caro*, 18

7    Cal. App. 4th at 668.  Specifically, Late July argues that Plaintiffs' allegation of reliance is

8    implausible in light of the fact that Plaintiffs allege in their complaint that proper, non-misleading

9    alternatives to ECJ include the term "dried cane syrup."  Given the similarity between "dried cane

10   syrup" and "evaporated cane juice," Late July contends, it is not plausible, absent further factual

11   allegations, that Plaintiffs could have been misled by the latter but nor the former.  Motion at 12.

12   In *Kane v. Chobani, Inc.* (*Chobani III*), 973 F. Supp. 2d 1120, 1134 (N.D. Cal. 2014), *vacated on*

13   *other grounds*, 645 F. App'x 593 (9th Cir. 2016), this Court, considering a similar claim, found

14   that Plaintiffs' repeated acknowledgment that "fruit juice concentrate" is a well-known added

15   sugar undermined their alleged reliance on the word "juice" in "evaporated cane juice" as denoting

16   something "healthy." Here, however Plaintiffs do not allege that that they would have recognized

17   "fruit juice concentrate" as a form of added sugar.[2]  And for the reasons discussed above, the term

18   they *do* allege that they would have recognized, "dried cane syrup," is meaningfully different from

19   "evaporated cane juice" because it omits the key confusing word "juice."  Evaporated cane juice

20   can be construed as connoting something more healthful than "dried cane syrup."

21          Plaintiffs' allegations thus meet the reasonable consumer standard.  Plaintiffs have alleged

22   sufficient facts to show that a reasonable consumer would share Plaintiffs' concern about added

23   sugar and that a reasonable consumer would be misled by Defendant's misrepresentation.  For that

24   reason, Late July's alleged misrepresentation was material, and Plaintiffs' reliance may be

25   presumed.

26

27   _____

28   [2] The SAC does quote various authorities that identify "fruit juice concentrate" as a term denoting added sugar, but it nowhere states that Plaintiffs in this case would have recognized it as such, unlike the term "dried cane syrup."

1              1.       Plaintiffs' Claims Meet the Heightened Pleading Standard Set by Rule 9(b)

2           Under Rule 9(b), claims sounding in fraud or mistake are subject to heightened pleading

3    requirements, which require plaintiffs alleging fraud to "state with particularity the circumstances

4    constituting fraud." Fed. R. Civ. P. 9(b); s*ee Kearns,* 567 F.3d at 1124.  Thus, claims sounding in

5    fraud must allege "an account of the 'time, place, and specific content of the false representations

6    as well as the identities of the parties to the misrepresentations.'" *Swartz,* 476 F.3d at 764

7    (internal quotation marks omitted).  The plaintiff must set forth "what is false or misleading about

8    a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.,* 42 F.3d at 1548 (9th Cir. 1994).

9    This Court has found that Rule 9(b) applies to violations of the UCL under the "unlawful" prong

10   where, as here, the crux of Plaintiffs' "unlawful" UCL claim alleges fraudulent conduct. *See, e.g.*,

11   *Park v. Welch Foods, Inc.*, No. 5:12-CV-06449-PSG, 2013 WL 5405318, at *4–5 (N.D. Cal. Sept.

12   26, 2013).  In *Park*, this Court found that Plaintiffs failed to meet Rule 9(b)'s heightened pleading

13   requirements because they failed to allege "when during the class period, where, how many, or

14   how many times" they purchased the products, whether they were personally exposed to the

15   alleged misrepresentations, and the content of these labels.  2013 WL 5405318, at *4–5.

16          In *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at

17   *6 (N.D. Cal. May 26, 2011), this Court found that allegations similar to those in this case met

18   Rule 9(b)'s heightened pleading requirements.  In *Astiana*, the plaintiffs claimed that the

19   defendants' statements were allegedly misleading because they did not disclose that their products

20   contained synthetic ingredients. *Id.*  The plaintiffs alleged that the "*who*" was the defendants, the

21   "*what*" was the statement that product was "all natural," the "*when*" was "since at least 2006," and

22   "throughout the class period," and the "*where*" was on the product labels. *Id.*  This Court found

23   that these allegations sufficiently explained the "who, what, when, where, and how" of the alleged

24   deception. *Id.* at 6.  Similarly, in *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889 (N.D. Cal.

25   2012), where the plaintiffs alleged that ConAgra had deceptively labeled their products with

26   "100% natural" and "organic," among other claims about their products' health benefits, this

27   Court found that the plaintiffs' allegation that they had bought the products "since 2008, and

28   throughout the Class Period," was enough to put ConAgra on notice. *Id.* at 902.

10

1    Plaintiffs allegations are sufficient under this standard.  Late July places great emphasis on

2    the fact that Plaintiffs do not allege how many times or where they purchased the products during

3    the class period, but these omitted details are unnecessary in light of the purposes behind Rule

4    9(b).  The purposes of Rule 9(b) are to provide defendants with adequate notice to defend the

5    charges against them, to deter plaintiffs from filing complaints merely to enable discovery of

6    unknown wrongs, to prevent reputations from being harmed by baseless fraud charges, and to

7    prohibit plaintiffs from unilaterally imposing social and economic costs without factual basis.

8    *Kearns*, 567 F.3d at 1125 (citing *In re Stacs Elecs. Sec. Litig.*, 89 F.3d at 1405).  Alleging the

9    purchase of specific identified products with particular labels at issue "throughout the Class

10   Period" (which commences in a given year) is sufficient to put a defendant on notice of the claims

11   against it.  *Jones*, 912 F. Supp. 2d at 902.  Requiring Plaintiffs to specify *e.g.*, the specific stores

12   they purchased Late July's products, or the exact dates of purchase, would not materially affect

13   Late July's ability to mount a defense.

14   In addition, Plaintiffs' allegations in this case are at least as strong as the allegations in

15   *Astiana*, which this court found satisfied Rule 9(b)'s requirements.  2011 WL 2111796, at *6.  In

16   *Astiana*, the "who" was the defendants, the "what" was the statement that product was "all

17   natural," the "when" was "since at least 2006" and "throughout the class period," and the "where"

18   was on the product labels.  *Id.*  The plaintiffs alleged that the statements were misleading because

19   the defendants did not disclose that the product contained synthetic ingredients.  *Id.*  This Court

20   found that the plaintiffs' allegations sufficiently explained the "who, what, when, where, and how"

21   of the alleged deception.  *Id.* at 6.  The same is true here.

22   Plaintiffs' allegations therefore satisfy the heightened pleading requirement of Rule 9(b).

23   2.    Preemption

24   The FDCA expressly preempts efforts by states to impose certain food labeling

25   requirements that go beyond those required by federal statute or regulation.  Specifically, the Act

26   provides that "no State or political subdivision of a State may directly or indirectly establish under

27   any authority . . . any requirement for nutrition labeling of food that is not identical to the

28   requirements" of various sections of the federal statute, including those governing nutritional

11

1    labeling (§ 343(q)) and mandating the use of the "common or usual name" of ingredients (§

2    343(i)).  21 U.S.C. § 343-1(a).   Late July argues that Plaintiffs' claims are preempted, for two

3    reasons.  First, it contends that Plaintiffs are, in effect, attempting to impose a requirement to label

4    "added sugar," contrary to the requirements of federal law.  Second, it argues that both preemption

5    and due process concerns prohibit states from banning the use of the term "ECJ" during the period

6    prior to the FDA's Final Guidance.  The Court rejects each of these contentions.

7         With respect to the first argument, Late July appears to conflate two separate federal

8    requirements.  Plaintiffs argue that the term "ECJ" as used in ingredient lists misled them because

9    they read the lists in an effort to determine whether the products at issue contained "added sugar."

10   Late July points to the fact that 21 U.S.C. § 343(q) contains requirements regarding the provision

11   of information about the amount of sugars and other nutrients in food products, and that 21 C.F.R.

12   § 101.60 contains detailed requirements governing the use of terms like "sugar free."  *See* Motion

13   at 18-19.  Because none of those requirements mandate differentiation between naturally occurring

14   sugar and added sugar, Late July argues, Plaintiffs' claims impermissibly seek to add an additional

15   requirement to indicate the presence of added sugar.

16        Late July mischaracterizes Plaintiffs' claims.  Plaintiffs have nowhere alleged that Late

17   July was required explicitly to warn of added sugars, nor do they raise any claims pertaining to the

18   labeling of the amount of sugar in the nutrition information, as governed by § 343(q).  Instead,

19   Plaintiffs focus on the separate statutory requirement, in both federal and state law, that the

20   *ingredient list* use the "common or usual name" for the various ingredients listed therein.  *See* 21

21   U.S.C. § 343(i); Cal. Health & Safety Code § 110725.  ECJ, Plaintiffs contend, is not the common

22   or usual name for sugar, and Late July's labels thus violated both the federal requirement and the

23   identical state requirement.  This claim does not seek enforcement of any requirement exceeding

24   those existing under federal law.

25        Second, Late July argues that because the FDA issued its Final Guidance clarifying that

26   ECJ is not the common or usual name for sugar only in May 2016, Plaintiffs cannot assert liability

27   for the use of that term prior to that date, because to do so would both impose a requirement

28   beyond the federal requirements, resulting in preemption, and would violate due process through

12

1    the retroactive application of an agency's interpretation of a regulation. *See* Motion at 20-22.  In

2    support of this argument, Defendants rely on two recent district court cases, *Wilson v. Frito-Lay N.*

3    *Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013) and *Peterson v. ConAgra Foods, Inc.*, No.

4    13-CV-3158-L NLS, 2014 WL 3741853, at *4 (S.D. Cal. July 29, 2014).  *Wilson* and *Peterson*

5    each concern the FDA's disclosure requirements for MSG.  Plaintiffs in each case brought

6    mislabeling claims under California law with respect to assertions on various products that they

7    contained "No MSG."  During the class periods, the FDA issued a statement clarifying that under

8    its rules, manufacturers were prohibited from using a "No MSG" label on a product as long as any

9    of its ingredients contained MSG.  Both courts found that Plaintiffs' claims were barred during the

10   period prior to the FDA statement.  The focus in each decision was on due process.  *Wilson*

11   emphasized that "Before the FDA's November 2012 clarification, the only information about the

12   FDA's MSG regulations that would have been available to Defendant were warning letters based

13   on specific factual circumstances and a proposed rule that was abandoned.  Defendant was simply

14   not on notice during the Class Period that its labels did not comply with the FDA rule."  961 F.

15   Supp. 2d. at 1147.  By contrast, in the present case, Late July had clear notice at least as early as

16   2009 that the FDA considered the term ECJ to be false and misleading.  Accordingly, the same

17   fairness and notice considerations are not implicated in the instant case.

18        Further, both *Wilson* and *Peterson* relied on a Ninth Circuit case, *United States v. AMC*

19   *Entm't, Inc.*, 549 F.3d 760, 770 (9th Cir. 2008), for the proposition that "retroactive application of

20   a regulatory clarification contravenes due process."  *Wilson*, 961 F. Supp. 2d. at 1147.  But *AMC*

21   involved an effort by the United States to impose retroactive liability for violating a regulation

22   after a clarification.  By contrast, the present cases involve claims under state laws that merely

23   parallel the federal requirements.  During the period before the FDA Guidance, the meaning of

24   "common or usual name" as applied to ECJ was, at most, ambiguous.  Indeed, as noted above,

25   there were prior indications that the use of the term ECJ would be misleading under federal law.

26   During that period, a state law determination that ECJ was not the common or usual name for

27   sugar was not inconsistent with federal law; it was a reasonable interpretation of federal law.  As

28   such, California law did not clearly impose additional requirements on top of federal law.  The

13

1    FDA Guidance did not change federal law or reverse an earlier decision; rather, it clarified any

2    prior ambiguity about that federal law. Thus, finding of liability under California law would not

3    be a retroactive application of new law; rather, the FDA Guidance confirmed that the state law

4    labeling requirements were indeed consistent with federal law.

5           In sum, Plaintiffs claims under the UCL, FAL, and CLRA are not preempted by federal

6    law. Because Plaintiffs adequately allege reliance under heightened pleading standard of Rule

7    9(b), Late July's motion to dismiss those claims is **DENIED.**

8    C.    Plaintiffs' Claims for Unjust Enrichment

9           Plaintiffs assert a claim for unjust enrichment under the common law. *See* SAC ¶¶ 209-

10   212. Late July points out that the Ninth Circuit has recognized that "in California, there is not a

11   standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Group, Inc.*, 783

12   F.3d 753, 762 (9th Cir. 2015). As the court in *Asitana* recognized, however, California courts

13   have stated that courts may construe an unjust enrichment claim "as a quasi-contract claim seeking

14   restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014).

15   Thus, as the Ninth Circuit previously explained, in fact the "Supreme Court of California and

16   California Courts of Appeal have recognized actions for relief under the equitable doctrine of

17   unjust enrichment." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1006 (9th Cir. 2013) (citing

18   *Ghirardo v. Antonioli,* 14 Cal.4th 39 (1996)). "The doctrine applies where plaintiffs, while having

19   no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has

20   knowingly accepted under circumstances that make it inequitable for the defendant to retain the

21   benefit without paying for its value." *Hernandez v. Lopez,* 180 Cal.App.4th 932, 938 (2009). For

22   example, *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 197 (2000), the court held that where a

23   purported contract granting plaintiff paternity rights to a child conceived by artificial insemination,

24   the plaintiff could nonetheless recover damages equal to the amount of benefit he had conferred on

25   defendant in reliance of the agreement under an unjust enrichment theory. Alternatively, "a party

26   to an express contract can assert a claim for restitution based on unjust enrichment by 'alleg[ing in

27   that cause of action] that the express contract is void or was rescinded.'" *Rutherford Holdings*,

28   223 Cal. App. 4th at 231 (quoting *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.*

1    44 Cal.App.4th 194, 203 (1996)).

2            Late July is therefore incorrect that the unjust enrichment claim should be dismissed solely

3    on the ground that no such claim is cognizable under California law.  And because Plaintiffs have

4    plausibly alleged that they were harmed by Late July's material misrepresentations, Plaintiffs can

5    state a claim under either theory of unjust enrichment.  First, it would be "inequitable for [Late

6    July] to retain the benefit" Plaintiffs conferred upon them in reliance upon Late July's

7    misrepresentation.  Second, to the extent that Plaintiffs' purchase created a contractual relationship

8    between them and Late July, a fraudulent misrepresentation makes a contract voidable and/or

9    subject to rescission where the party seeking the remedy relied to his or her detriment on the

10   misrepresentation.  *See* Restatement (Second) of Contracts § 164 (1981); Cal. Civ. Code § 1689;

11   *see also* Restatement (Second) of Contracts § 164 cmt. c (1981) ("No legal effect flows from

12   either a non-fraudulent or a fraudulent misrepresentation unless it induces action by the recipient,

13   that is, unless he manifests his assent to the contract in reliance on it.").  Because, as discussed

14   above, Plaintiffs adequately pled reliance on Late July's misrepresentation, they can also state a

15   claim for unjust enrichment.  Late July's motion to dismiss this claim is therefore **DENIED**.

16   D.      Plaintiffs' Claims Outside of California

17           Despite asserting only claims under California law, Plaintiffs bring their claims "on behalf

18   of a nationwide class of consumers who, within the Class Period, purchased Defendant's

19   Misbranded Food Products."  SAC ¶ 8.  As Late July notes, the California Supreme Court has

20   recognized a general "presumption against extraterritorial application" of state law, including the

21   UCL and CLRA.  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).  Indeed, *Sullivan*

22   explained that "[n]either the language of the UCL nor its legislative history provides any basis for

23   concluding the Legislature intended the UCL to operate extraterritorially."  *Id.*[3]   In particular,

24   these statutes do "not support claims by non-California residents where none of the alleged

25   misconduct or injuries occurred in California."  *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F.

26   Supp. 2d 1119, 1126 (N.D. Cal. 2000).  Late July thus argues that Plaintiffs have stated no valid

27

28   [3] Courts have repeatedly recognized that the same conclusion applies to the FAL and CLRA.  *See, e.g.*, *Wilson*, 961 F. Supp. 2d at 1147.

15

1   claims with respect to out of state purchases, because they have alleged no nexus between any

2   such purchases and California—indeed, there are no allegations at all concerning any out of state

3   purchases.  In the alternative, Late July argues that even if Plaintiffs were to assert claims under

4   other states' consumer protection laws—which they did not—they would have no standing

5   because they did not buy products in those states.  Motion at 22 (citing *Pardini v. Unilever*, 2013

6   WL 3456872, at \*9 (N.D. Cal. July 9, 2013).

7         Plaintiffs correctly point out that "Class allegations typically are tested on a motion for

8   class certification, not at the pleading stage."  *Pardini*, 961 F. Supp. 2d at 1061.  However,

9   "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of

10   the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw.*

11   *v. Falcon,* 457 U.S. 147, 160 (1982).  In such cases, "some courts have struck class allegations

12   where it is clear from the pleadings that class claims cannot be maintained."  *Pardini*, 961 F. Supp.

13   2d at 1061.  Here, because Plaintiffs have made no allegations that they purchased products

14   outside of California, and no allegations supporting a nexus between California law and any out of

15   state purchases, and in light of the presumption against extraterritorial application of the California

16   laws at issue, the Court will **DISMISS** their class allegations with leave to amend to correct these

17   deficiencies.  *See Pardini*, 961 F. Supp. 2d at 1061 (noting in similar circumstances that "[t]his is a

18   pleading defect amenable to determination prior to a motion for class certification" and dismissing

19   claims with leave to amend).

20   E.    Injunctive Relief

21         Plaintiffs seek injunctive relief requiring Defendants to cease and desist from selling its

22   allegedly mislabeled products.  Late July contends that Plaintiffs lack standing to seek such relief.

23   Under Ninth Circuit case law, "to establish standing to pursue injunctive relief . . . [a plaintiff]

24   must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier*

25   *1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quoting *O'Shea v. Littleton,* 414 U.S.

26   488, 496 (1974)).  Late July argues that Plaintiffs cannot make this showing for two reasons.

27   First, Plaintiffs repeatedly allege that they would not have purchased the products had they known

28   that ECJ means sugar; because they now know this, they cannot plausibly allege that they will be

16

1    similarly misled in the future.  Second, Late July stopped using the term ECJ in 2014.  *See* Motion

2    at 25.  Accordingly, there is no possibility of future injury.

3         As Plaintiffs argue, however, in some analogous consumer cases courts have found

4    standing in similar circumstances on the ground that "[t]o do otherwise would eviscerate the intent

5    of the California legislature in creating consumer protection statutes because it would effectively

6    bar any consumer who avoids the offending product from seeking injunctive relief."  *Koehler v.*

7    *Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at \*6 (N.D. Cal. Dec. 13, 2012); *see*

8    *also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("[W]ere the

9    Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to

10   defeat standing for an injunction, then injunctive relief would never be available in false

11   advertising cases, a wholly unrealistic result.").

12        Crucially, however, in nearly all cases finding standing to seek injunctive relief in similar

13   circumstances, the plaintiffs had specifically alleged that they intended to purchase defendants'

14   products in the future.[4]  As such, their injury was ongoing; absent injunctive relief, "they could not

15   rely on [defendants' label] representation[s] with any confidence."  *Ries*, 287 F.R.D. at 533.

16   Courts have noted that there are many cases "where a consumer would still be interested in

17   purchasing the product if it were labeled properly – for example, if a food item accurately stated

18   its ingredients."  *Mason v. Nature's Innovation, Inc.*, No. 12CV3019 BTM DHB, 2013 WL

19   1969957, at \*4 (S.D. Cal. May 13, 2013); *see also Jou v. Kimberly-Clark Corp.*, No. C-13-03075

20   JSC, 2013 WL 6491158, at \*4 (N.D. Cal. Dec. 10, 2013).  Accordingly, such consumers face

21   ongoing harm from mislabeling because they are unable to trust the representations made on the

22   offending products' labels.  In keeping with this reasoning, a number of recent decisions have held

23   that "to establish standing in a case such as this one, the plaintiff must allege that he intends to

24   purchase the products at issue in the future."  *Swearingen v. Santa Cruz Nat., Inc.*, No. 13-CV-

25

26

---

27   [4] *Koehler*, 2012 WL 6217635, *supra*, is a notable exception.  However, the author of that opinion, Judge Illston, later expressly repudiated its reasoning and held that "to establish standing, plaintiff must allege that he intends to purchase the products at issue in the future."  *Rahman v. Mott's LLP*,
28   No. CV 13-3482 SI, 2014 WL 325241, at \*10 (N.D. Cal. Jan. 29, 2014).

04291-SI, 2016 WL 4382544, at *13 (N.D. Cal. Aug. 17, 2016).[5]

This line of cases is persuasive. As the Supreme Court has explained, one of the elements

constituting the "irreducible constitutional minimum of standing" is the requirement that a

plaintiff have suffered (or will suffer) an "injury in fact – an invasion of a legally protected interest

which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or

hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal

quotation marks omitted). "In other words, for a federal court to have authority under the

Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible

harm." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013).

Where plaintiffs in a deceptive labeling case do not plan ever to purchase the offending

product in the future, they lack this sort of personal stake in seeking injunctive relief, as the

"alleged misrepresentations cannot do them any injury, and injunctive relief will not provide them

with any redress." *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG

PLAX, 2014 WL 5311272, at *11 (C.D. Cal. Sept. 4, 2014). Indeed, as the Supreme Court has

specifically explained, "[p]ast exposure to illegal conduct does not in itself show a present case or

controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse

effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton,* 414

U.S. 488 493 (1974)). Absent any intent to purchase Late July's products in the future, Plaintiffs

cannot complain of any "continuing, present adverse effects." But where plaintiffs *do* plan to

purchase defendants' products in the future, for the reasons discussed in *Ries*, an injunction can

redress the prospect of real injury. In such a case, a finding of standing would be consistent with

the familiar purposes of the doctrine, which include "ensuring that litigants are truly adverse and

therefore likely to present the case effectively, ensuring that the people most directly concerned

are able to litigate the questions at issue, ensuring that a concrete case informs the court of the

consequences of its decisions, and preventing the anti-majoritarian federal judiciary from usurping

United States District Court
For the Northern District of California

---

[5] This precise issue is presented in two cases currently pending before the Ninth Circuit. *See*
*Nancy Lanovaz v. Twinings North America, Inc.,* No. 16-16628, and *Victor v. R.C. Bigelow, Inc.*,
No. 16-16639.

the policy-making functions of the popularly elected branches." William A. Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 222 (1988) (citations omitted).  This is especially true where the plaintiff in incentivized to vigorously litigate the substantive claim because he/she has at stake both a claim for monetary relief as well as injunctive relief to protect against future injury.

In this case, however, Plaintiffs make no allegation that they plan to purchase Late July's products in the future.  Indeed, to the contrary, they repeatedly state that they would not have purchased the products had they been aware that they contained added sugar.  *See* SAC ¶¶ 34, 97-98, 139.  In light of these allegations, "the Court has difficulty envisioning how plaintiffs could amend their complaint to allege plausibly that, now knowing the products to contain added sugar, they will purchase the products in the future." *Santa Cruz Nat.*, 2016 WL 4382544, at *13.  But because that Court cannot say that "the pleading could not possibly be cured by the allegation of other facts," *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000), the Court will allow leave to amend.  The Court therefore **GRANTS** Late July's motion with respect to Plaintiffs' request for injunctive relief, and **DISMISSES** Plaintiffs claims with leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' UCL, FAL, and CLRA claims, and their claim for unjust enrichment, but **GRANTS** the motion as to Plaintiffs' request for injunctive relief and Plaintiffs' claims based on out-of-state purchases; it **DISMISSES** those claims with leave to amend within thirty (30) days.

This order disposes of Docket No. 101.

**IT IS SO ORDERED**.

Dated: May 5, 2017

_____
EDWARD M. CHEN
United States District Judge