UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| MARY SWEARINGEN, et al., | Case No. 13-cv-04324-EMC |
|---|---|
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| LATE JULY SNACKS LLC, | |
| Defendant. | Docket No. 121 |

This case arises out of Defendant Late July Snacks LLC's ("Late July") use of the term "evaporated cane juice" on certain multigrain chip and cracker products. Plaintiffs allege that "evaporated cane juice" is a misleading term for sugar, use of which violates California's False Advertising Law, *see* Cal. Bus. & Prof. Code § 17500, the Consumer Legal Remedies Act, *see* Cal. Civ. Code § 1770, and the Unfair Competition Law ("UCL"), *see* Cal. Bus. & Prof. Code § 17200. Plaintiffs claim the term was "unlawful" under the UCL insofar as it violated the Sherman Law, *see* Cal. Health & Saf. Code § 110100, which adopts and incorporates the federal Food and Drug Cosmetic Act, 21 U.S.C. § 301 *et seq.*, and its food labeling regulations, *see* 21 C.F.R. § 101 *et seq*. The detailed factual and legal background for Plaintiffs' claims is set forth in the Court's order on Defendant's last motion to dismiss. *See* Docket No. 116. It is recounted below to the extent relevant to Defendant's new arguments in support of dismissal. For the reasons below, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. DISCUSSION**

A. Legal Standard

In considering a Rule 12(b)(6) motion to dismiss, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party,

although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985). Generally, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). The plaintiff must set forth "what is false or misleading about a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 253 F.3d 423, 429 n. 6 (9th Cir. 2001).

B. <u>Plaintiffs' UCL Claims and UCL Standing</u>

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because Section 17200 is written in the disjunctive, it establishes "three varieties of unfair competition: practices which are unlawful, unfair, or fraudulent." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone, Co.*, 20 Cal. 4th 163, 180 (1999). The

2

UCL's "unlawful" prong "borrows" violations of other laws, treating them as unlawful practices independently actionable under the UCL. *Id.* at 179 (citations omitted).

This dispute centers on Plaintiffs' claim that Defendant's use of the term "evaporated cane juice" violates the Sherman Act and incorporated FDA regulations, and is thus "unlawful" under the UCL. Plaintiffs argue that because the Sherman Law does not require proof of reliance, a claim under the UCL's "unlawful" prong does not either.[1] This argument misses the mark. The dispute here concerns UCL standing, not the substantive elements of an "unlawful" conduct claim. Separate and apart from what the Sherman Law requires to establish a violation, Plaintiffs must prove that they have standing under the UCL, that is, that they are "person[s] who ha[ve] suffered injury in fact and ha[ve] lost money or property *as a result of* the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). In *Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th 310 (2011), the California Supreme Court made clear that where the essence of the claim is based on misrepresentations, "as a result of" under Section 17204 "means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.* at 326 (quotation and citation omitted). The Court explained that because "reliance is the causal mechanism of fraud," a plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements." *Id.* (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 306 (2009)). Indeed, this requirement applies regardless of whether the claim is for "unlawful, unfair, or fraudulent" conduct under the UCL. *Id.* The requirement applies to all private claims for relief under the UCL, including requests for UCL injunctive relief and restitution. *See* Cal. Bus. & Prof. Code § 17204 (stating that "[a]ctions for relief pursuant to this chapter shall be prosecuted exclusively . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition," without distinction based on the remedy sought); Cal. Bus. & Prof. Code § 17203 (limiting representative claims for injunctive relief, including relief "to restore

---

[1] Previously, the Court held that Plaintiffs had adequately *plead* reliance, a ruling Defendant does not challenge now. Thus, the sole question is whether Plaintiffs may proceed on a legal theory that does not require proof of such.

3

to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition," to persons who meet standing requirements of section 17204); *see Kwikset*, 51 Cal.4th at 320-22 (describing history and effect of Proposition 64, passed in 2004).

In *Kwikset*, the plaintiffs alleged that defendants' conduct violated, *inter alia*, a California law making it unlawful to state merchandise was "Made in U.S.A." if parts were in fact "entirely or substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7(a). A violation under Section 17533.7(a), like the Sherman Law, does not require proof of reliance or deception. Yet, the California Supreme Court in *Kwikset* held that the plaintiffs needed to demonstrate reliance to establish *standing* under the UCL. 51 Cal.4th at 326, n.9. Standing under the UCL requires proof of reliance even if reliance is not an express substantive element of the underlying statute when the claim essentially sounds in misrepresentation. If it does, UCL requires a showing of reliance on such fraud or misrepresentation in order to establish standing. *Id.* at 326-27.

Here Plaintiffs' claim under the Sherman Law and its incorporation of FDA regulations sounds in misrepresentation. For example, the Sherman Law states that "[a]ny food is misbranded if its labeling is false or misleading in any particular." Cal. Health & Safety Code § 110660. *See also* Cal. Health & Safety Code § 110665 (food "misbranded" if not in conformance with federal nutritional labeling requirements); Cal. Health & Safety Code § 110670 (food "misbranded" if "misleading" pursuant to § 110290 *et seq.*). Further, the Sherman Law expressly incorporates "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act . . . [as] the food labeling regulations of this state." Cal. Health & Safety Code § 110100. Many of the incorporated regulations at issue here sound in misrepresentation. *See*, *e.g.*, 21 C.F.R. § 102.5(a) ("The common or usual name of a food . . . shall *accurately* identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients.") (emphasis added). In this case, Plaintiff contends that use of the term "evaporated cane juice" violated provisions of the Sherman Law by "disseminat[ing] false or misleading food advertisements," TAC ¶ 113, selling "falsely advertised food," TAC ¶ 114,

4

advertising "misbranded food," TAC ¶ 115, using "false and misleading" labeling, TAC ¶ 116, and similar provisions, *see* TAC ¶¶ 117-123. Accordingly, to establish UCL standing under *Kwikset*, Plaintiffs must allege and demonstrate that they relied on the misrepresentation on the deceptive label "evaporated cane juice" in order to show that they were harmed "as a result of" the deceptive label. In sum, Plaintiffs cannot seek UCL relief based on a strict liability theory.

Plaintiffs' reliance on *Bruton v. Gerber Products, Co.*, No. 15-15174, 2017 WL 3016740 (9th Cir. July 17, 2017) to the contrary is misplaced. *Bruton* merely reiterates the uncontroversial proposition that "the reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation." 2017 WL 3016740 at *2. It says nothing about UCL *standing* under Section 17204; it does not cite or discuss *Kwikset*. *Bruton* cannot be read to eliminate the UCL's standing requirement for Sherman Act claims. In any event, *Bruton* is an unpublished opinion and has no binding precedential effect. *See* 9th Cir. Rule 36-3(a). In the absence of any binding Ninth Circuit authority published after *Kwikset*, the Court is "bound by decisions of the state's highest court in analyzing questions of that state's law." *In Matter of Heller Ehrman LLP*, 830 F.3d 964, 973 (9th Cir. 2016); *cf. Mohamed v. Uber Tech., Inc.*, 848 F.3d 1201, 1211 n.5 (9th Cir. 2016).

Accordingly, Defendant's motion is **GRANTED** to the extent it seeks to dismiss any claim under the UCL based on strict liability without a showing of reliance. As the Court previously held, Plaintiffs may proceed on a theory under the UCL's "unlawful" prong because they have adequately pled reliance; to prevail, they must ultimately prove it. Docket No. 116 at 6-7.

C. <u>Nationwide v. California Class Allegations</u>

Defendant argues that Plaintiffs exceeded the scope of the Court's leave to amend by reverting from a nationwide class to a California class. This argument lacks merit. The Court previously dismissed the nationwide class claims because "Plaintiffs have made no allegations that they purchased products outside of California, and no allegations supporting a nexus between California law and any out of state purchases, and in light of the presumption against extraterritorial application of the California laws at issue." Docket No. 116 at 16. The Court granted Plaintiff "leave to amend to correct these deficiencies." *Id.* By narrowing the class

5

1 allegations, Plaintiffs have corrected those deficiencies consistent with the Court's order.

2 Defendant's motion to dismiss on this basis is **DENIED**.

D. Standing to Pursue Injunctive Relief Under Article III

Apart from statutory standing under the UCL, Plaintiffs must establish Article III standing for injunctive relief. To satisfy Article III's case or controversy requirement, a plaintiff must demonstrate that he or she has suffered an injury in fact, that the injury is traceable to the defendant's conduct, and that the injury can be redressed by a favorable decision. *See Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). In the context of injunctive relief, a plaintiff must also demonstrate a "'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 496 (1974)). Here, Plaintiffs seek injunctive relief requiring Defendant to cease and desist from selling its allegedly mislabeled products. Late July contends that Plaintiffs lack standing to seek such relief because now that they know that "evaporated cane juice" is added sugar, they can no longer be deceived by the term and thus cannot show a real and immediate threat of future harm. *Chapman*, 631 F.3d at 946.

The Court previously rejected Late July's argument, citing a line of cases which hold that such consumers may nevertheless maintain standing if they plead an intent to purchase the products in the future. Docket No. 116 at 17-18 (citing cases). Such consumers still "face ongoing harm from mislabeling because they are unable to trust the representations made on the offending products' labels," *id.* at 17, and thus may seek prospective injunctive relief to correct the misrepresentations. The Court declines to revisit its earlier holding at this time.

However, pursuant to that holding, the Court granted Plaintiffs leave to amend to plausibly allege that they intend to purchase Late July's multigrain chip and cracker products in the future, and thus are likely to suffer harm in the absence of an injunction. Plaintiffs have not done so. Plaintiffs added only one allegation to address the deficiency: that they "intend to purchase the [products] in the future, but only if this Court issues an injunction that prevents Defendant from listing 'evaporated cane juice' in the ingredient lists on [the products]." *See* TAC ¶ 132. Setting aside whether this intent can be reconciled with Plaintiffs' allegations that they would not have

purchased the products if they had known they contained added sugar,[2] Plaintiffs make clear their intent *not* to purchase the products absent issuance of a court injunction. At the hearing, counsel for Plaintiffs confirmed that Plaintiffs' future purchases are conditional on the Court's issuance of an injunction.

Given Plaintiffs' position as now clarified, it is difficult to discern a "real and immediate threat of repeated injury." *Chapman*, 631 F.3d at 946. If Plaintiffs will only buy the products after the injunction they seek is granted, then there is no "threat" of "actual or imminent harm," *Summers*, 555 U.S. at 493, because such injunction would eliminate the harm Plaintiffs seek to avoid: being misled by the term "evaporated cane juice." If the injunction Plaintiffs seek is entered, then Defendant would not be permitted to use the allegedly misleading term "evaporated cane juice." And if an injunction is not entered, there is no harm to Plaintiffs because they have stated categorically that they will not purchase the products. Thus, Plaintiffs' pleading constructs a situation in which there is no possible threat of actual or immediate harm under any circumstance.[3]

In sum, Plaintiffs fail to adequately plead a threat of imminent harm. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' claims for injunctive relief for lack of standing.[4] However, there are cases now pending before the Ninth Circuit which could clarify the

---

[2] TAC ¶ 30 ("Plaintiffs desire to purchase healthy food products, free of added or excessive sugar. Plaintiffs did not realize that these products contained added sugar . . . . If not for this misrepresentation, Plaintiffs would not have purchased these products."); *id.* ¶ 91 ("Plaintiffs would not have bought the products they bought had they known they contained 'added sugar.'"); *id.* ¶ 92 ("Plaintiffs would not have bought the products they purchased if they had known they contained an added sugar or syrup; a refined sugar or sweetener; or that evaporated cane juice was not a juice but rather sugar or syrup and an added sugar and a refined sweetener."); *id.*¶ 130 ("Plaintiffs would not have purchased the products had they know[n] that the products contained added sugar as opposed to 'evaporated cane juice.'").

[3] Plaintiffs do not contend, *e.g.*, they are harmed from not being able to buy Defendant's products or that they might buy the products under a shadow of distrust.

[4] The Court is not persuaded by Defendant's argument that Plaintiffs also lack standing because Late July stopped using the term on their products and because of the FDA's final guidance restricting use of the term. The cases cited are distinguishable. *See Bronson v. Johnson & Johnson, Inc.*, No. 12-04184 CRB, 2013 WL 1629191, at *1, n.2 (N.D. Cal. Apr. 16, 2013) (injunctive relief moot because products discontinued, not because labels had been changed); *Lanovaz v. Twinings N. Am., Inc.*, 2016 WL 4585819 (N.D. Cal. Sep. 2, 2016) (injunctive relief defeated at summary judgment – not on the pleadings – for failure to produce evidence that

7

issue.[5] The parties may revisit the issue if appropriate.

E. <u>Rule 9(b) Particularity and Timing of Purchase</u>

Defendant also argues that, under Federal Rule of Civil Procedure 9(b), Plaintiffs must plead with greater particularity the precise time during the Class Period that they purchased Late July's products. The Court previously rejected this argument. *See* Docket No. 116 at 10-11. Late July claims that the circumstances have changed. Specifically, the Court dismissed Plaintiffs' similar claims in another case, *Swearingen v. Healthy Beverage, LLC*, 2017 WL 1650552 (N.D. Cal. May 2, 2017), on the basis that they could not plausibly have been misled by the term "evaporated cane juice" after reading a website stating that it was added sugar. Thus, Late July argues that the precise timing of Plaintiffs purchases is now material because it needs to know whether Plaintiffs did so before or after reading the Healthy Beverage website.

However, in *Healthy Beverage*, the Court did not make a factual finding that Plaintiffs had in fact read the website. Rather, the Court merely determined that Plaintiffs' dual allegations – first, that the defendant Healthy Beverage's website was "incorporated" into the label, and, second, that they had read the label – made it implausible to claim they had relied on the misrepresentation because the incorporated website disclosed that evaporated cane juice was added sugar. Defendant cannot import into this case a conclusive factual finding that Plaintiffs read the website description. Moreover, at the hearing on the instant motion, counsel for Plaintiffs represented that Plaintiffs have since confirmed they never read the Healthy Beverage website. Defendant did not object, and there is no pleading in this case that indisputably establishes the

---

conduct was likely to continue). At the pleading stage, a defendant seeking to defeat a claim for injunctive relief on mootness grounds on the basis of its voluntary change in practice must meet a "heavy burden of proving that the challenged conduct cannot reasonably be expected to occur." *Reese v. Odwalla, Inc.*, 2017 WL 565095, at *6 (N.D. Cal. Feb. 13, 2017) (denying motion to dismiss injunctive relief claim at pleading stage) (quoting *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014)). Defendant has not done so; its sole argument is that the FDA has finalized non-binding guidance that identifies the challenged term as misleading. The existence of such guidance is not sufficient for the Court to conclude that "the challenged conduct cannot reasonably be expected to occur," *id.*, particularly where Plaintiffs also allege that Defendants' conduct violated other FDA regulations. *See*, *e.g.*, TAC ¶ 4.

[5] The parties have stated that there are at least three cases pending before the Ninth Circuit addressing this question. *See Nancy Lanovaz v. Twinings North America, Inc.,* No. 16-16628; *Victor v. R.C. Bigelow, Inc.*, No. 16-16639; *Khasin v. R.C. Bigelow, Inc.*, No. 16-16641.

8

contrary. The Court therefore **DENIES** Defendant's motion to dismiss under Rule 9(b) for the same reasons previously stated. *See* Docket No. 116 at 10-11.

F. <u>Standing on Products Not Purchased</u>

Lastly, Defendant argues that Plaintiffs lack standing to bring claims for products they did not actually purchase. Here, Plaintiffs purchased a variety of Late July crackers and snack chips. TAC ¶ 2 (identifying purchases of Late July's Classic Saltines Crackers, Classic Rich Crackers, Mini Cheddar Crackers, Sandwich Crackers, Mini Peanut Butter Sandwich Crackers, and Bite Size Cheddar); *id.* (identifying purchases of Sea Salt By The Seashore Multigrain Snack Chips, How Sweet Potato It Is Multigrain Snack Chips, Cure for the Summertime Blues Snack Chips, and Mild Green Mojo Multigrain Snack Chips). Plaintiffs also plead claims for three other products they have not purchased, but which they allege "bear the identical deceptive, unlawful, and illegal label statement" that uses the term "organic evaporated cane juice." TAC ¶ 3. Plaintiffs allege these products "share the same label representations," are "packaged identically to the Purchased Products, and vary only in flavor." TAC ¶ 133. They attached images of four such "substantially similar products" to their complaint; all are Multigrain Snack Chips with the flavors "Sea Salt Seashore," "Red Hot Mojo," "Sun Lime," and "Dude Ranch." TAC, Exs. 10, 11.

Defendant argues that Plaintiffs have not plead "sufficient similarity" among the products to support standing. The Court is not persuaded. A plaintiff challenging a deceptive food label may proceed on claims for products they have not purchased so long as they are "substantially similar." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, C-11-2901 EMC, 2012 WL 2990766 (N.D. Cal. Jul. 20, 2012). In *Astiana*, the Court found that "Plaintiffs are challenging the same kind of food products (*i.e.*, ice cream) as well as the same labels for all of the products – *i.e.*, 'All Natural Flavors' for the Dreyer's/Edy's products and 'All Natural Ice Cream' for the Haagen-Dazs products. That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors." *Id.* at *13. Similarly, here, the non-purchased products are different flavors of the same Multigrain Snack Chips product purchased by Plaintiffs. In addition, Plaintiffs have identified a common mislabeling practice across all products – the use of the term "evaporated cane juice."

9

Defendant's cases are distinguishable because they involved products that were dissimilar. For example, *Leonhart v. Nature's Path Foods, Inc.*, involved "approximately eighty Unpurchased Products that loosely could be categorized as breakfast foods but that cover a wide spectrum, including cold cereals, hot cereals, granolas, pancake mix, bars, toaster pastries, and waffles." *See* 2014 WL 6657809, at *4 (N.D. Cal. Nov. 21, 2014). In *Kane v. Chobani, Inc.*, 12-02425-LHK, 2013 WL 5289253, at *11 (N.D. Cal. Sep. 19, 2013), the court did not hold that the different yogurt products were not substantially similar. Rather, the court found that plaintiffs' complaint contained insufficient information for it "to discern . . . which products [p]laintiffs are contending contained each representation and for which products these representations were false." *Id.* In contrast, here, Plaintiffs have pled sufficient information for the Court to determine that different flavors of the same multigrain chip product involving the same purported misrepresentation (*i.e.*, "Evaporated Cane Juice") are sufficiently similar for Plaintiffs to proceed with their claim.

Accordingly, Defendant's motion to dismiss on these grounds is **DENIED.**

## II. CONCLUSION

Defendant's motion to dismiss a strict liability theory under the UCL's unlawful prong, without a showing of reliance to support standing, is **GRANTED.** Defendant's motion to dismiss the California class claims is **DENIED**. Defendant's motion to dismiss Plaintiffs' UCL injunctive relief claims for lack of standing is **GRANTED**. Plaintiffs still have a claim for restitution under the UCL, which is independent from injunctive relief. *Clayworth v. Pfizer*, 49 Cal.4th 758, 790 (2010) ("[T]he right to seek injunctive relief under section 17203 is not dependent on the right to seek restitution; the two are wholly independent remedies.").

///
///
///
///
///
///

Defendant's motion to dismiss Plaintiffs' claims under Rule 9(b) is **DENIED**.

Defendant's motion to dismiss Plaintiffs' claims for products they did not purchase is **DENIED**.

This order disposes of Docket No. 121.

**IT IS SO ORDERED**.

Dated: October 16, 2017

EDWARD M. CHEN
United States District Judge